# SALVADOR VIETA PUIG

*v.*

# SOCIÉTÉ ANONYME DES SUCRERIES DE SAINT JEAN.

San Juan, Law, No. 1182.

### CONSTRUCTION OF CONTRACT.

Contract—Spanish Words.

.1. It is for the court to construe the meaning of a contract, and this is true whether the contract be in English or Spanish. In the latter case the court is assisted by the official interpreter.

Same—Court and Jury.

2. Where a party does not impeach the correctness of the official translator, and the court agreed with the interpretation of the translator, there is no question for the jury.

Contract—Collateral Clause.

3. Where a contract is for a certain price for cane and this is carried out, it does not invalidate the contract that it contains a clause for having the central accept cane below standard at a price it thinks proper to pay, when that price is shown to be proper under the circumstances.

Misconstruction—Error without Injury.

4. Even if there was any misconstruction of the words of one contract, it could not be taken advantage of by a party who has another contract.

Plaintiff's Case—Rebuttal.

5. In a suit to recover the value of cane furnished under a contract, the plaintiff must prove on his main case that it was up to standard, and cannot wait for rebuttal to show this fact for the first time.

Complicated Account—Equity.

6. The equitable remedy for account lies where a court of law is incompetent to examine the account nisi prius with necessary accuracy.

Puig v. Société Anonyme des Sucreries.

Executed Contract—Not Attacked after Carried Out.

7. Where a contract for the furnishing of cane is carried out and the dispute is only as to the value of what is furnished, the whole contract cannot afterwards be attacked as invalid.

Opinion filed May 4, 1918.

_Mr. H. R. Francis_ for plaintiff.

_Mr. H. G. Molina_ for defendant.

HAMILTON, Judge, delivered the following opinion:

The trial of this case consumed a week, going to the jury at 12 o'clock at night. The grounds set up in the motion for a new trial are thirty-seven in number, but many relate to different rulings on the same principle.

1. It is urged that the court erred in declining to receive the evidence of Manuel Fernandez Juncos, librarian of the Carnegie Library, as to the meaning of the Spanish words, "admitirlas con la reducción que estime oportuno hacer," in the contract sued on. In 1 Chamberlayne, Ev. § 133, it is declared that where the terms of the document are vague, technical, in a foreign language, or the like, evidence may be introduced before the jury as to its meaning, and a conflict of testimony will be settled by the jury. The meaning of the writing is for the judge, who will use all facts as determined by the jury. As the law creating this court provides that its proceedings shall be in English, it may be that for some purposes Spanish is to be considered as a foreign language, but the principle cannot be held to apply in its entirety, inasmuch as Spanish is almost

Puig v. Société Anonyme des Sucreries.

the universal language of Porto Rico and every one is more or less acquainted with it. The official interpreter translated the expression as what it "thinks fit to do;" and the argument, which is the basis of the case of the plaintiff, is that this left the performance of this part of the contract to one party, and therefore under Civil Code, § 1223, it became a unilateral and hence void contract. The discussion at this time was solely upon the word "oportuno," and the actual construction placed on the phrase by the parties as proved to the jury seemed to the court and the jury to show that the meaning was "reasonable." However, later in the case, before it went to the jury, attention was called to the word "estime," whereupon the court adopted the translation of the official interpreter, and held that the meaning was "with reduction which it things proper to make." Upon all the evidence, however, it seemed beyond dispute that under the contemporaneous construction of the parties the reduction made was "reasonable," and under Civil Code, § 1249, "in order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract." [Compilation 1911, § 4355.]

If the court, therefore, committed any error in its first interpretation of the word "oportuno," it was corrected before the case went to the jury in such a manner as to agree with that of the interpreter. On either view of the situation it was unnecessary to have expert testimony.

The court, moreover, is not willing to admit that under such circumstances the question of meaning of words is one to be determined by the jury. The general rule is that the court is to construe the words of a contract, getting at the meaning

if necessary from expert or any other testimony.   The offer of experts as made was only for jury use.   If the words are ambiguous, the circumstances under which the contract was entered into and carried out are admissible in the proof to go to the jury.   That was done in the case at bar.

2. As to how far the court is bound by the construction of the official interpreter, Chamberlayne is quoted, § 353, as saying that the probative effect of the interpretation when questioned by a party is determined by the jury, and that therefore the court in this case usurped functions of the jury.   Whatever be the merit of this contention in the abstract, the party in question, the plaintiff, did not attempt to impeach the translator's correctness, nor was he prevented from doing so, and so the point raised is not apposite to this particular case.   The court, moreover, when the whole clause instead of one word was pointed out, agreed with the interpretation of the official translator and of the plaintiff.

3. The clause in question was not the gist of the contract. The contract was for grinding cane of 80 per cent purity, and as to 80 per cent cane there was no contest.   The clause in question was not a condition precedent, but an individual proviso as to what the central might do with cane delivered which was below 80 per cent purity.   The central was not required to take any such cane.   The proviso should properly be construed as for the benefit of the colono.   In other words, if the colono brought cane to the central below the contract grade, the central could refuse to take it, and in such case the cane would be a dead loss.   To obviate this the contract had a proviso that if this happened the central could "accept it with the reduction which it thought proper to make."   If this

Puig v. Société Anonyme des Sucreries.

was left entirely to the central, it cannot be said to avoid the contract, and no reason appears why this exceptional state of facts should not be left to the discretion of the central. The colono ex hypothesi was at fault in bringing cane which could not be used, and any price would be that much gained by him.

In point of fact, the practice of the central was to use this cane at a price which a jury might well infer from the evidence was fair, and if this was true the present contention in any event would be immaterial. If the colono (1) got all that he contracted for from standard cane, which is not disputed, and (2) got a proper price for what the central took in order to help out the colono, he could in no event get anything more, and any technical error in the admission of testimony or otherwise would be at most error without injury. Errors may quite possibly happen in the course of a long trial, but if they bring no injury it is a waste of time to consider them.

Moreover, the practical result of the plaintiff's contention would be that, if the central accepted the unripe cane, it would have to treat it as ripe, and pay the same price for all grades, which under one phase of the evidence at least would be operating the plant at a loss. Such a construction of the contract cannot be correct. Contracts are to be construed so as to carry out their intention,—in this case to sell cane suitable for grinding into sugar,—and not so as to render them meaningless or worse. Civil Code, § 1251.

4. The contract of Manrique is different from the others, in that, by agreement, this clause was changed so as to call for a new agreement as to unripe cane. He, therefore, is not injured by the misconstruction of other words, if there was any misconstruction, and, on the other hand, got the full benefit of all evi-

Puig v. Société Anonyme des Sucreries.

dence as to what was a proper price for cane under the circumstances.   Whether the decision of the jury was right or wrong, it is at least conclusive, because they had the necessary facts before them.

5. The court ruled that the plaintiff need only show the delivery of the cane, and that thereupon it would be presumed that the cane was up to standard unless the defendant showed otherwise.   The defendant, however, introduced evidence to show how much was not up to standard, that is to say, was below 80 per cent purity, and what at least might have been a fair way of getting at the proper price for this cane under the proviso in the contract.   This was by books and other testimony.   On the rebuttal the court declined to let the plaintiff prove that certain cars had stood upon the sidetracks a number of days and hence might have deteriorated.   It would seem that this was a part of the plaintiff's main case.   It was the plaintiff's duty to prove his case, that is to say, what he delivered and what price he ought to have received for it.   If he wished to rely upon the presumption that the cane was all up to standard, he had a right to do so; but if the defendant showed that it was not, and he questioned it even on cross-examination of the plaintiff's witnesses, it is difficult to see how the plaintiff could leave the matter for rebuttal at the end of the case by showing that it was up to standard.   The general testimony offered, that cane might deteriorate, moreover was not definite enough for any purpose.

6. Enough has been said to dispose of the motion for a new trial, but another consideration should be taken into account. The complaint as filed shows a number of contracts or items in favor of the plaintiff and running by assignment or other-

Puig v. Société Anonyme des Sucreries.

wise against the defendant. It amounted to a claim made up of several items. Upon the trial it became evident that each of these items was an independent contract, made, except the first, by the defendant with other parties than the plaintiff and afterwards assigned to the plaintiff; each contract being, on the one side, for the supply, and, on the other, for the grinding of cane of 80 per cent purity, with a proviso as to cane below standard. All the contracts were in writing, with one exception. Furthermore, the evidence developed that each transaction, quite apart from the assignment, involved a number of details and cross claims if not cross accounts. After the fourth claim had been entered upon, the defendant made a motion to dismiss the case because showing a complicated account improper for a jury trial, and to be handled only upon the equity side of the court. The court granted the motion so as to cut off other evidence, and the case proceeded upon the four claims already more or less developed; the court stating that if the point had been raised earlier it would have been sustained as to claims not yet presented. The court is still of the same opinion, and if a new trial is granted it could only be of the first claim triable under the complaint, if indeed each one of the claims is not properly to be considered as in its nature so complicated as to require a trial by equity rather than jury methods. The English rule is that the equitable remedy applies where the court of law would be incompetent to examine the account nisi prius with the necessary accuracy. If it is doubtful whether adequate relief could be had at law, equity should take jurisdiction. Pom. Eq. Jur. § 1421, notes.

7. The result of the whole discussion seems to be that the plaintiff was relying upon the legal proposition that the pro-

viso in the contract was void because one sided; and that, there-
fore, the defendant should pay full price for everything that
he accepted, even though a part was accepted by agreement
solely under the proviso.   This has been discussed, and it is
sufficient to add that whatever might be the case in regard to
the contract before it was executed, it cannot be attacked after
it is fully carried out.   Both plaintiff and defendant handled
the cane below standard, on the theory that proper compensa-
tion would be made under the criticized clause, and the jury
came to the conclusion that proper compensation had been
made.   The famous provision, § 1245 of the Civil Code, com-
ing down from the Ordenamiento de Alcala, is that "contracts
shall be binding, whatever may be the form in which they may .
have been executed, provided the essential conditions required
for their validity exist" [Compilation 1911, § 4351], and these
conditions are set out in § 1228 of the Civil Cide, as follows:

"There is no contract unless the following requisites exist:
1. The consent of the contracting parties.   2. A definite ob-
ject which may be the subject of the contract.   3. The cause
for the obligation which may be established."   [Compilation
1911, § 4334.]

If the words appear contrary to the evident intention of the
contracting parties, the intention shall prevail.   § 1248.

There would seem, therefore, to be no ground for a new trial,
and the motion is denied.

It is so ordered.